2024 IL App (1st) 240501-U

FOURTH DIVISION
Order filed: September 5, 2024

No. 1-24-0501

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| George W. West, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2023 M1122656 |
| | ) | |
| PNC Bank, N.A., | ) | Honorable |
| | ) | Stephen A. Swedlow, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Rochford concurs in the judgment.
Justice Ocasio specially concurs in the judgment.

**ORDER**

¶ 1   *Held*: Circuit court judgment affirmed due to failure to comply with Illinois Supreme Court Rule 341(h) and failure to provide a report of proceedings or an acceptable substitute.

¶ 2   Plaintiff George W. West, acting *pro se*, filed a notice of appeal from an order of the circuit court entering judgment in favor of Defendant PNC Bank, N.A. ("PNC") on his action for breach of contract. For the reasons which follow, we affirm the judgment of the circuit court.

¶ 3 The record on appeal includes the common law record and a supplement filed by PNC, but does not include a report of proceedings. On October 18, 2023, West filed a small claims complaint against PNC in the circuit court of Cook County, alleging that PNC overcharged him interest on a vehicle loan. West specifically alleged that even though he paid the loan off early, 48 months into the 72-month term, PNC still charged him the amount of interest that would have been due for the full 72-month loan term. West alleged he was entitled to two years of allegedly overcharged interest of $1,122.74 plus "penalty money".

¶ 4 The matter proceeded to a bench trial on February 22, 2024. At trial, PNC introduced into evidence an exhibit showing that West entered into a Retail Installment Contract with PNC to finance the purchase of a 2017 Chevrolet Camaro on June 30, 2017. The contract provided that West would repay the balance of the loan along with a 3.64% "Finance Charge", resulting in 72 monthly payments of $448.77. The amount financed was $28,943.20, the total Finance Charge would be $3,368.24 over the life of the loan, and the total of all payments would be $32,311.44.

¶ 5 Another exhibit introduced into evidence by PNC showed that West made regular payments with interest assessed according to the contract. The exhibit showed how much of each payment was allocated to the principal balance and how much was allocated to interest. On June 7, 2021, approximately 48 months into the loan term, West made a payment of $11,206.05 to pay off the loan, with $11,169.29 applied to the remaining principal balance and $36.76 applied to outstanding interest. PNC also introduced into evidence an annotated version of the same document showing how interest was calculated for each payment. The annotated exhibit shows that West paid $2,906.23 in interest to PNC in total.

¶ 6     After trial, the circuit court entered judgment by written order for PNC. West filed a timely notice of appeal.

¶ 7     On appeal, West argues the circuit court erred in finding for PNC and maintains that he was overcharged interest by PNC. As PNC points out, West's brief fails to comply with Illinois Supreme Court Rules 341 (eff. Oct. 1, 2020) and 342 (eff. Oct. 1, 2019), as he has failed to provide any citation to the record, any citation to authority, or an appendix to his brief. West also failed to provide a report of proceedings of the February 22, 2024 bench trial, nor has he provided a bystander's report or an agreed statement of facts under Rule 323 (eff. July 1, 2017).

¶ 8     Rule 341(h) outlines the necessary components of an appellant's brief. This includes a table of contents, an introductory paragraph stating the nature of the action, a statement of the issue or issues presented for review, a statement of jurisdiction, a statement of facts with citation to the record, and an argument section with citation to authority. Ill. S. Ct. R. 341(h) (eff. Oct. 1, 2020).

¶ 9     West utilized a form approved by the Supreme Court for his brief, which includes blank spaces and explanation for the requirements of each section of Rule 341(h), but his filing fails to comply with the Rule. West's brief is unclear as to the exact nature of his legal claim of error, his statement of facts contains no citations to the record (Ill. S. Ct. R. 341(h)(6)), and his argument section contains no citation to the record or to any authority (Ill. S. Ct. R. 341(h)(7)), other than the Illinois criminal theft statute, 720 ILCS 5/16-1(a) (West 2024). West's failure to provide a report of proceedings of the February 22, 2024 bench trial or an acceptable substitute further hampers our review, as the only information in the record regarding the evidence that was presented at trial is the exhibits introduced by PNC at trial.

¶ 10    We are entitled, as a reviewing court, to have the issues on appeal clearly defined, pertinent authority cited, and a cohesive legal argument presented. *Lewis v. Heartland Food Corp.*, 2014 IL App (1st) 123303, ¶ 5. "The appellate court is not a depository in which the appellant may dump the burden of argument and research." *Thrall Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986). When an appellant fails to comply with Rule 341, this court may strike the brief and dismiss the appeal. *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 77. That West is representing himself in this appeal does not relieve him of the obligation to comply with Rule 341. *Wing v. Chicago Transit Authority*, 2016 IL App (1st) 153517, ¶ 7. Additionally, in the absence of a transcript of proceedings or an acceptable substitute, we "presume[] that the order entered by the trial court was in conformity with the law and had a sufficient factual basis." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984).

¶ 11    While we are mindful that West is proceeding *pro se*, that does not excuse him from the requirements of Rule 341, nor does it require us to develop and assess arguments on his behalf based on an incomplete record. *Wing*, 2016 IL App (1st) 153517, ¶ 7. As the deficiencies in West's brief and the lack of a report of proceedings from trial prevent meaningful review, we affirm the judgment of the circuit court in favor of PNC.

¶ 12    Affirmed.

¶ 13    JUSTICE OCASIO, specially concurring:

¶ 14    At one point in his brief on appeal, George West (the plaintiff) complains that he does not understand why he lost because the trial court never explained it to him. We can and should. To decide this case, we do not need a brief that strictly complies with the rules. We do not even need a transcript from the trial. All we need are the four exhibits that PNC Bank (the defendant) arranged

to have filed as a supplemental record, which show why West lost at trial. I think he deserves that explanation.

¶ 15    The facts are simple. In 2017, West took out a car loan so he could buy a new Chevrolet Camero. He put down $7000 at the time of purchase and borrowed $28,943.20 at a 3.64% annual interest rate. He agreed to a six-year repayment term. According to the mandatory disclosures listed at the top of the loan agreement, West would pay $3,368.24 in interest over the life of the loan. As it turned out, though, after making monthly payments for four years, West decided to pay the rest of the loan in full.

¶ 16    The dispute in this case is over how much interest West had to pay. Because he paid off the loan two-thirds of the way through the original repayment term, West reasons that he should only have to pay two-thirds of the expected interest, which would be $2,245.49. PNC Bank, however, charged him $2,906.23 in interest. To figure out which party is right, all we have to do is find out what the loan agreement says about interest.

¶ 17    The agreement is in the record, so we can read it and decide for ourselves what it means.[1] The part that matters for this case is this paragraph about interest (which the agreement calls the "Finance Charge") and repayment:

> "Buyer Promises to pay to the order of Seller at the offices of PNC BANK (Assignee) located in Pittsburgh, PA 15222 the Amount Financed shown above together with a Finance Charge on the principal balance of the Amount Financed from time to time unpaid at the rate of 3.64% per annum from date until maturity in 71 installments of $448.77 each and a final installment of $448.77, beginning on 08/14/17 and continuing on the same day of each successive month thereafter until fully paid. All payments shall be

---

[1] "The construction of a contract presents a question of law," so "our standard of review is *de novo*." *Gallagher v. Lenart*, 226 Ill. 2d 208, 219 (2007).

applied first to accrued Finance Charge and the balance to principal. The Finance Charge has been computed on the scheduled unpaid balances of the Amount Financed on the assumption that all scheduled installments will be paid when due."

There are three key provisions here.

¶ 18   The first key provision says, "The Finance Charge has been computed on the scheduled unpaid balances of the Amount Financed on the assumption that all scheduled installments will be paid when due." This means that the $3,368.24 finance charge listed at the top of the loan agreement was only an *estimate*. It shows how much in interest West could expect to pay if he made 72 monthly payments according to the schedule. The actual interest that West would pay would depend on when he actually made the payments.

¶ 19   The second key provision says that actual interest is based "on the principal balance of the Amount Financed from time to time unpaid." This means that PNC Bank was only allowed to charge interest on whatever portion of the loan *that had not been paid back yet*. Each time West made a payment, the amount that PNC Bank could charge interest on went down.

¶ 20   That brings us to the third key provision, which says, "All payments shall be applied first to accrued Finance Charge and the balance to principal." What this means is that interest payments were not spread evenly over the repayment period. Instead, each time West made a payment, it would be used first to pay whatever interest had accumulated back down to zero. Because interest was accumulating faster at the start of the loan, when the unpaid balance was higher, West was paying more in interest toward the start of the loan than he was toward the end.

¶ 21   The upshot is that, while West could prepay any part of the loan, doing so would only save him from paying interest on *that particular portion of the loan*, not on the whole loan. Even then,

his savings would only be on the interest that would have otherwise accumulated between the prepayment date to the scheduled payment date. So, when West paid the remaining balance on his loan four years into the six-year repayment term, the loan agreement only entitled him to somewhere between one month and twenty-four months of interest savings on the amount he prepaid, which was less than 40% of the original amount borrowed. It did not entitle him one-third of the interest that would have been paid over the life of the loan.

¶ 22 I have reviewed the account statement, which purports to record the dates and amounts of West's payments. The record contains nothing that contradicts the account statements or otherwise suggests that it is wrong.[2] The account statement confirms that PNC charged and collected the interest that it was contractually entitled to, no more and no less, so there is a reasonable factual basis for the trial court's judgment.[3]

¶ 23 For these reasons, I agree with the majority that the judgment should be affirmed, but I would affirm on the merits.

---

[2] "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984).

[3] We accept the trial court's factual determinations unless "an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence." *Eychaner v. Gross*, 202 Ill. 2d 208, 251-52 (2002).